## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| MILO SHAMMAS, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:12-cv-1462** |
| | ) | |
| MARGARET A. FOCARINO, | ) | |
| *Commissioner of Patents,* | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

At issue post-judgment in this 15 U.S.C. § 1071(b) action seeking review of a decision

from the Patent and Trademark Office's ("PTO") Trademark Trial and Appeal Board ("TTAB")

are the following two questions:

> (1) whether the requirement in 15 U.S.C. § 1071(b)(3) that plaintiff must pay the PTO
> "all expenses of the proceeding" includes the salaries of the PTO attorneys and paralegals
> who worked on the case; and

> (2) whether the PTO's claim for $11,436.15 for the effort expended by the PTO's counsel
> in moving to strike supplemental new evidence filed by plaintiff in contravention of a
> discovery order is a "reasonable attorney's fee" under Rule 37(b)(2)(C), Fed. R. Civ. P.

For the reasons that follow,

> (1) "all expenses of the proceedings" under 15 U.S.C. § 1071(b)(3) includes $35,926.59
> in attorney and paralegal salaries and $393.90 in photocopying expenses and thus,
> plaintiff is required to pay these expenses to the PTO, and

> (2) the PTO's request for $11,436.15 in attorney's fees under Rule 37(b)(2)(C), Fed. R.
> Civ. P., representing the attorney effort in moving to strike the new evidence, is excessive
> and unreasonable in the circumstances; a reasonable attorney's fee award under the
> circumstances is $2,280.00.

-1-

# I.

On December 19, 2012, plaintiff, Milo Shammas, filed a complaint in this district

pursuant to 15 U.S.C. § 1071(b)(1) seeking review of the TTAB's decision denying federal

trademark registration to the proposed mark, PROBIOTIC, with respect to fertilizers. The TTAB

had previously concluded that the term PROBIOTIC was generic with respect to fertilizers, and

alternatively, that the term was descriptive, but lacked secondary meaning and hence did not

warrant registration as a trademark.

Because plaintiff brought the case under 15 U.S.C. § 1071(b)(1), which allows a

dissatisfied applicant denied trademark registration by the TTAB to file an action in a district

court seeking review of the TTAB's decision, both parties were permitted by this statute to

submit new evidence in addition to the administrative record.[1] Both parties did so in compliance

with a scheduling and discovery order entered on March 5, 2013 that required, in part, as

follows:

(1) both parties to exchange initial disclosures, as required by Rule 26(a)(1), Fed. R. Civ.
P., by March 29, 2013;

(2) discovery to be completed by June 14, 2013;

(3) plaintiff to serve on the PTO any new evidence, including non-expert declarations or
expert reports, upon which plaintiff intended to rely, by April 12, 2013;

(4) the PTO to serve on plaintiff any new evidence on which the PTO intended to rely by
May 17, 2013; and

(5) plaintiff to serve on the PTO any rebuttal expert report upon which plaintiff intended
to rely by May 31, 2013.

---

[1] Section 1071(b)(1) provides, in pertinent part, as follows: "Whenever a person authorized...to
appeal to the United States Court of Appeals for the Federal Circuit is dissatisfied with the
decision of the...[TTAB], said person may...have remedy by a civil action," and the district
court "may adjudge that an applicant is entitled to a registration upon the application
involved...as the facts in the case may appear."

*Shammas v. Rea,* Case No. 1:12cv1462 (E.D. Va. March 5, 2013) (Order).  Thus, the discovery

order clearly required the record on new evidence to be completed by mid-May.

In compliance with the discovery order, the parties submitted their new evidence to the

record on the prescribed dates.  The discovery order permitted no further new evidence

submissions.  Yet, when summary judgment was filed thereafter on August 9, 2013, plaintiff,

without leave of court, sought to add additional new evidence to the record.  Because this attempt

to submit additional new evidence contravened the discovery order, the PTO promptly filed a

motion and supporting memorandum to strike this late-filed new evidence.  By order dated

October 15, 2013, the PTO's motion to strike this tardy new evidence was granted, and the

evidence was stricken as a sanction under Rule 37, Fed. R. Civ. P., which provides that a court

"may sanction a party who fails to obey an order to provide or permit discovery by prohibiting

that party from introducing late-filed matters into evidence." *Shammas v. Rea,* Case No.

1:12cv1462 (E.D. Va. Oct. 15, 2013) (Order) (quoting Fed. R. Civ. P. 37(b)(2)(A)(ii)).

By separate order of the same date, summary judgment in favor of the PTO was granted

on the ground that substantial evidence supported the TTAB's finding that the term PROBIOTIC

was generic and that plaintiff's new evidence, reviewed de novo, did not alter that conclusion.

Following the entry of judgment to this effect, the PTO filed a motion for fees and expenses,

seeking the following:

> (1) expenses of the case under 15 U.S.C. § 1071(b)(3), which provides that, in an action
> appealing a decision of the TTAB to a federal district court, "all the expenses of the
> proceeding shall be paid by the party bringing the case, whether the final decision is in
> favor of such party or not;" and
>
> (2) reasonable attorney's fees for the costs of the motion to strike under Rule 37(b)(2)(C),
> Fed. R. Civ. P.

By way of a response, plaintiff appropriately and sensibly apologized for this late proffer of new evidence and the resulting burden imposed on the PTO, and thus does not oppose a reasonable attorney's fees award under Rule 37(b)(2)(C), Fed. R. Civ. P. Plaintiff does, however, oppose the PTO's entitlement to attorney's fees under § 1071(b)(3) on the ground that attorney's fees are not included in the statute's requirement that a plaintiff pay "all expenses of the proceeding." Accordingly, the questions presented are (1) whether "all expenses of the proceeding" in § 1071(b)(3) includes the PTO's attorney's fees; and (2) whether the PTO's request for $11,436.15 in attorney's fees under Rule 37(b)(2)(C), Fed. R. Civ. P., is reasonable.

## II.

### A.

Section 1071(b)(3) clearly allows a party dissatisfied with a trademark decision of the TTAB to choose between appeal to the Court of Appeals for the Federal Circuit, or filing an action in district court. By itself, this does not seem remarkable. Yet, the statute goes on to provide that—win, lose, or draw—the party bringing an action in district court must pay the PTO "all expenses of the proceeding."[2] The dispute here is whether the phrase "all expenses of the proceeding" includes the PTO's attorney's fees.

---

[2] Section 1071 is arguably an odd statute. It provides unsuccessful trademark applicants with a choice between an appeal to the Court of Appeals for the Federal Circuit on the administrative record, or alternatively, an action in federal district court where the administrative record may be supplemented with new evidence. Congress's decision to allow this choice is odd for several reasons. First, it serves to lessen the trademark applicant's incentive to put her best evidentiary foot forward before the PTO given that if she fails before the PTO, she can supplement the record in the district court. Moreover, Congress no sooner provides this choice than it takes an energetic step to discourage its use by requiring the unsuccessful applicant who files the district court suit under § 1071(b) to pay all expenses of the district court proceeding, win, lose or draw. This could lead to an anomalous result where the applicant must pay the PTO's expenses of the district court proceeding even where the PTO loses in the district court on the administrative record alone and no new evidence is admitted or considered. In this circumstance, there is little

The question whether "all expenses of the proceeding" includes attorney's fees appears to be one of first impression, as the parties have cited no published decision addressing this issue, nor has any been found. In any event, the question is not difficult to resolve; it is a straightforward case of statutory interpretation with the analysis beginning and ending with the plain language of the statute. In this regard, the ordinary definition of the term "expenses" answers the question presented.[3] As Black's Law Dictionary states, the term "expenses" means:

> That which is expended, laid out, or consumed. An outlay; charge; cost; price. The expenditure of money, time, labor, resources, and thought. That which is expended to secure benefit or bring about a result.

Merriam-Webster defines the term "expenses" as:

> The amount of money that is needed to pay for or to buy something. An amount of money that must be spent especially regularly to pay for something. Something on which money is spent. An act or instance of expending. Something expended to secure a benefit or bring about a result.

Thus, the plain meaning of the term "expenses," by itself, would clearly seem to include attorney's fees. But if any doubt remains about that inclusion, it is removed by Congress's addition of the word "all" to clarify the breadth of the term "expenses." When the word "expenses" is prefaced with the word "all," it is pellucidly clear Congress intended that the plaintiff in such an action pay for all the resources expended by the PTO during the litigation, including attorney's fees.

---

reason to saddle the unsuccessful applicant with the PTO's expenses. A second anomalous result is that the statute invites forum shopping. By allowing an action to be filed in a district court in lieu of an appeal to the Court of Appeals for the Federal Circuit, the statute invites an unsuccessful applicant to pick a district court in a favorable circuit because the appeal will be to the circuit in which the district court sits, not to the Court of Appeals to the Federal Circuit.

[3] *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009) (stating that statutory interpretation should focus on the text and "the language employed by Congress" because "the ordinary meaning of that language accurately expresses the legislative purpose").

The conclusion compelled by the statute's plain language finds firm support in the

following statutes passed by Congress, all of which explicitly include "attorney's fees" as a

subset of "expenses:"

- 28 U.S.C. § 2412 (stating that "a court shall award to a prevailing party other than the United States fees and other expenses" and further stating that a judgment for costs does not include "the fees and expenses of attorneys");

- 5 U.S.C. § 504 ("An agency that conducts an adversary adjudication shall award...fees and other expenses incurred by that party in connection with that proceeding.");

- 12 U.S.C. § 4246 (stating that, in an action against a person committing bank fraud, "the court...may allow the United States reasonable attorney's fees and other expenses of litigation");

- 14 U.S.C. § 1447(c) (permitting recovery of "any actual expenses, including attorney's fees, incurred");

- 12 U.S.C. § 5009 (providing that any person who breaches a banking warranty in connection with a substitute check is liable for "reasonable attorney's fees and other expenses of representation" related to the substitute check);

- 42 U.S.C. § 1490s (stating that a non-compliant party may be liable for a monetary judgment including "attorney's fees and other expenses incurred by the United States in connection with the action").

- Rule 37(b)(2)(C), Fed. R. Civ. P. (requiring the party who violates or disobeys a discovery order to pay "reasonable expenses, including attorney's fees" caused by the failure to obey the order).

Similarly, other courts in a variety of contexts have also found attorney's fees to be a

subset of the term "expenses." For example, the Supreme Court, in discussing fee-shifting

statutes, stated that "[o]ur legal system generically requires each party to bear his own *litigation*

*expenses, including attorney's fees,* regardless of whether he wins or loses." *Fox v. Vice*, 131 S.

Ct. 2205, 2213 (2011) (emphasis added). To the same effect, the district court in *United States*

*ex rel. Smith v. Gilbert Realty Co*, 34 F.Supp.2d 527 (E.D. Mich. 1998), a False Claims Act case,

concluded that Congress intended the term "expenses" to include attorney's fees, based on the

plain meaning of the term "expenses" and use of the term in various statutory contexts. In reaching this conclusion, the district court in *Gilbert Realty* also noted that it found no authority to support the proposition that legal fees and expenses are mutually exclusive categories, as that court noted that "a legal fee would certainly seem to be an expense" incurred "in order to secure benefit or bring about a result." *Id.* at 530.

Given that "all expenses of the proceeding" clearly includes attorney's fees, it follows that the PTO's claim for $32,836.27 in attorney salaries, $3,090.32 in paralegal salaries, and $393.90 in photocopying expenses must be granted. In determining these amounts, the PTO used the actual salaries of the lawyers and paralegal instead of prevailing market rates to calculate a lodestar figure, because, as the PTO correctly notes, "consistent with the concept of 'expenses'...the USPTO only asks for reimbursement of the amounts that it *actually incurred* during the litigation of this civil action; *i.e.*, that portion of its attorneys' salaries that were dedicated to this proceeding." *Shammas v. Rea*, Case No. 1:12cv1462 at *15 (E.D. Va. Nov. 13, 2013) (Memorandum .in Support of Motion for Fees and Expenses). Accordingly, rather than using the market rate method, the PTO multiplied the number of hours its attorneys and paralegal devoted to the case[4] by the actual hourly rate of the attorneys and paralegal. Thus, the resulting product of the hours worked times the actual hourly rate—$32,836.27—is the amount § 1071(b) requires plaintiff to pay the PTO.

---

[4] To avoid double compensation, the PTO has excluded from the expenses it claims under § 1071(b) the hours worked by its attorneys on the motion to strike, for which the PTO seeks attorney's fees under Rule 37, Fed. R. Civ. P.

**B.**

As noted previously, plaintiff does not dispute the PTO's entitlement to reasonable attorney's fees incurred in moving to strike late-filed new evidence submitted in contravention of the October 15, 2013 discovery order.[5] Although plaintiff does not dispute the PTO's entitlement to reasonable attorney's fees, it seems clear nonetheless that the total amount claimed—$11,436.15—is excessive in the circumstances.

Yet, before addressing the reasonableness of the fee claimed, it is worth noting that the PTO used prevailing market rates to calculate the attorney's fees due under Rule 37(b)(2)(C), Fed R. Civ. P., but then used the actual salaries of the PTO attorneys who worked on the case to calculate the attorney's fees due under 28 U.S.C. § 1071(b). The reason for using different methodologies to calculate attorney's fees is not immediately evident; the parties do not thoroughly address the issue, and indeed, plaintiff does not dispute either the PTO's use of actual attorney's salaries to calculate the award under § 1071(b) or the PTO's use of the prevailing market rate method to calculate the attorney's fee award under Rule 37, Fed R. Civ. P.

Although the parties have cited no published decision, and none has been found, that squarely addressing the proper methodology to be used in calculating attorney's fees for government attorneys under § 1071(b) or Rule 37(b)(2)(C), Fed. R. Civ. P.,[6] the cases—read as a whole—appear to suggest that attorney's fees should be calculated using prevailing market rates

---

[5] When a party is sanctioned pursuant to Rule 37, Fed. R. Civ. P., for violation of a court's discovery orders, "the Court must order the disobedient party...to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C), Fed. R. Civ. P.

[6] *Cf. Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1092-93 (3rd. Cir. 1988) (stating that attorney's fees for sanctions under Rule 11, Fed. R. Civ. P. should be calculated using prevailing market rates, even if the attorneys are salaried government attorneys).

where the entitlement to attorney's fees in a statute or rule is cast in terms of "reasonable"

attorney's fees, but attorney's fees should be calculated using actual salaries of the government

attorneys where the entitlement to attorney's fees in a statute or rule is cast in terms of expenses

or "actual" expenses.[7] This distinction certainly supports the use of the government attorney's

actual salaries under§ 1071(b) because that statute, properly construed, is aimed at reimbursing

the PTO for its actual expenses.  Less clear is how this distinction bears on the question whether

the market rate method should be used under Rule 37(b)(2)(C), Fed. R. Civ. P., where the

attorneys entitled to a fee award are government attorneys.   A plausible argument can be made

that, because an award of attorney's fees under Rule 37(b)(2)(C), Fed. R. Civ. P., is

compensatory, not punitive, the actual government salaries should be used in that context, as

well.  In any event, this issue need not be reached or decided here, because the parties do not

contest either the PTO's use of actual salaries under § 1071(b) or the PTO's of market rates

under Rule 37(b)(2)(C), Fed. R. Civ. P..  Additionally, the award of attorney's fees using market

rates under Rule 37(b)(2)(C), Fed. R. Civ. P., in this case is appropriately substantially reduced.

    In determining reasonable attorney's fees, the PTO used the familiar and appropriate

methodology of calculating a lodestar figure by first determining a reasonable hourly rate and

then multiplying this figure by the number of hours spent by the attorneys devoted to the matter.

---

[7] *See, e.g., Blum v. Stenson*, 465 U.S. 886, 896 (1984) (holding that, in a fee-shifting context, "reasonable fees…are to be calculated according to the prevailing market rates in the relevant community"); *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 367 (7th Cir. 2000) (stating that a court could not use the prevailing market rate to determine an award under the fee-shifting provision of 28 U.S.C. § 1447(c) because the statute limited fee awards to "actual expenses, including attorney's fees, incurred"); *Raney v. Federal Bureau of Prisons*, 222 F.3d 927, 932 (Fed. Cir. 2000) (stating that, in the context of fee-shifting statutes, "courts have consistently interpreted 'reasonable attorney fees' as prevailing market rate fees"); *In re Thompson*, 426 B.R. 759, 766 (Bankr. N.D. Ill. 2010) (stating that the statute authorizing sanctions for violation of an automatic stay only authorizes recovery of attorney's fees "for which [the party] is actually responsible" instead of attorney's fees based on prevailing market rates).

In this regard, the PTO used a figure of $380 per hour for the work of the two attorneys who worked on the matter, which—in the circumstances—is not a plainly unreasonable rate. [8] Similarly, the PTO determined the hourly rate of the paralegal to be $118.90 per hour, which also is not unreasonable. Next, the PTO multiplied the rate of $380 by a combined 29 hours for the work done by its attorneys, and further multiplied the rate of $118.90 by 3.5 hours for the work done by the paralegal.

Twenty-nine hours of attorney time to prepare and file a motion, memorandum in support, and reply memorandum is clearly excessive and unreasonable.[9] This conclusion follows from the fact that the discovery order was clear and unambiguous, and plaintiff's violation of that order was equally clear, and indeed, uncontested. Given that the facts were neither disputed nor complicated, and given that no novel legal issue was presented, there is simply no good reason for experienced attorneys to have spent 29 hours on this matter. Although thoroughness is a virtue, attorneys must exercise sound judgment to avoid devoting more time to a problem or issue than is warranted. Here, the issue confronting the PTO was, as the PTO itself recognizes,

---

[8] The PTO based this figure on *Won Kim v. U.S. Bank, N.A.,* 2013 WL 3973419 (E.D. Va. July 29, 2013) (O'Grady, J), in which the court used rates for general litigation approved by the Fourth Circuit in *Grissom v. The Mills Corp.,* 549 F.3d 313 (4th Cir. 2008), and then increased those rates by 14% to account for the increase in prices from 2008-2013. Based on the rates in *Won Kim,* the PTO claims a reasonable market rate for the work of the PTO attorneys is $433 for an attorney with 31 years of experience and $380 for an attorney with 16 years of experience. The PTO sensibly used the lower figure for the calculation of the attorney's fees award.

[9] The Fourth Circuit has stated that district court should be guided by twelve factors in determining a lodestar figure, three of which are relevant here:

      (1) time and labor expended;
      (2) novelty and difficulty of the questions raised; and
      (3) the skill required to properly perform the legal services rendered.

*Robinson v. Equifax Information Servs., LLC,* 560 F.3d 235, 244-45 (4th Cir. 2009).

"typical and mundane." *Shammas v. Rea*, Case No. 1:12cv1462 at *9 (E.D. Va. Nov. 13, 2013)

(Memorandum in Support of Motion for Fees and Expenses). The facts were neither disputed

nor complicated, and no novel legal issue was presented. Indeed, in its memorandum in support

of the motion to strike and reply brief, the PTO found it necessary to cite only two cases. A

competent lawyer should have been able to research the matter and prepare the motion and

supporting memorandum in less than 6 hours of focused work. The remaining 23 hours are

excessive, and, as the Supreme Court has stated, when awarding attorney's fees, "the district

court should...exclude from this initial fee calculation hours that were not 'reasonably

expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Accordingly, the PTO is entitled

to no more than $2,280.00 in attorney's fees.[10] An award greater than this amount would be

excessive and unreasonable in the circumstances.

### III.

In sum, the PTO is entitled to reasonable attorney's fees under Rule 37(b)(2)(C), Fed. R.

Civ. P., as set by the prevailing market rate for general litigation attorneys, in the amount of

$2,280.00. Furthermore, the PTO is entitled to "all expenses of the proceeding" under 15 U.S.C.

§ 1071(b)(3), comprised of $32,836.27 in attorney salaries, $3,090.32 in paralegal salaries, and

$393.90 in photocopying expenses.

An appropriate Order will issue.

Alexandria, Virginia
January 2, 2014

T. S. Ellis, III
United States District Judge

---

[10] This figure was determined by multiplying the reasonable rate given by the PTO—$380 per hour—by six hours.

-11-